UNITED STATES of America, Appellee,

v.

Edwin SANCHEZ, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Gregorio ROSARIO,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Rafael SANCHEZ, Defendant,
Appellant.

Nos. 89–1600 to 89–1602 and 90–1058.

United States Court of Appeals,
First Circuit.

Heard March 8, 1990.
Decided Oct. 24, 1990.

John C. McBride with whom McBride, Wheeler & Widegren, Boston, Mass., was on brief, for defendant, appellant Rafael Sanchez.

Thomas Kerner with whom Robert J. Wheeler, Jr., and McBride, Wheeler & Widegren, Boston, Mass., were on brief, for defendant, appellant Edwin Sanchez.

Gregorio Rosario, on brief, pro se.

Brien T. O'Connor, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on consolidated brief, for U.S.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Defendants Gregorio Rosario and Edwin and Rafael Sanchez appeal their convictions under 21 U.S.C. §§ 841(a) and 846 for conspiring to possess, and possessing, twelve kilograms of cocaine for distribution. The Sanchezes also appeal the 360–month prison sentences imposed under the Sentencing Guidelines. We affirm.

## I.

### BACKGROUND

The evidence revealed that Rafael Sanchez and Albert Lagos, a government informant and its key witness, met on several occasions during July and August, 1988, at the Rafael Sanchez place of business in Somerville, Massachusetts, and discussed where Lagos could obtain cocaine. On August 10, 1988, Rafael contacted Lagos and arranged a meeting at which Rafael informed Lagos that a friend had arrived with a shipment of thirty kilograms of cocaine. The two agreed to meet again the next day. At their August 11 meeting, Rafael told Lagos that the cocaine was "already over here." Then Rafael made a phone call to an unidentified individual. Rafael thereupon told Lagos that the price would be $23,500 per kilogram. Another meeting was arranged for later in the day, at which Rafael introduced his brother, Ed-

win Sanchez, to Lagos. Thereafter, the three rode around in a car, discussed the price and purity of the cocaine, and agreed to finalize the exchange that evening.

That evening, Edwin Sanchez met Lagos, and the two rode in Lagos's car to Gregorio Rosario's apartment in Everett. Earlier, in anticipation of the cocaine exchange, Lagos had put a briefcase, containing a phone book, in the trunk of his car. Massachusetts State Trooper Joseph Brooks, accompanied by other law enforcement officers, followed Lagos and Edwin Sanchez to the Rosario apartment. Once inside the apartment, Edwin and Rosario handed Lagos a suitcase containing twelve kilograms of cocaine. Lagos and Rosario left the apartment with the suitcase and returned to the Lagos car.

The police were watching as Rosario removed the briefcase containing the phone book from the trunk of the Lagos car and replaced it with the cocaine-laden suitcase. Approximately five minutes later the Massachusetts State Police forcibly entered the Rosario apartment, where they arrested Edwin Sanchez and Rosario and seized the briefcase, which had been smashed open. Subsequent analysis revealed that the substance inside the suitcase consisted of 12,-062 grams of 95% pure cocaine. Rafael Sanchez was arrested on the following day.

## II.

## DISCUSSION

### A. *Count I*

Edwin and Rafael Sanchez challenge the sufficiency of the evidence to support their conspiracy convictions under count I.

■ "The gist of conspiracy is an agreement to disobey or to disregard the law," *United States v. Drougas,* 748 F.2d 8, 15 (1st Cir.1984), which the government may prove by direct and circumstantial evidence, *United States v. Rivera–Santiago,* 872 F.2d 1073, 1079 (1st Cir.1989). The evidence must establish that the defendants intended to agree and that they intended to commit the substantive criminal offense which was the object of their un-

lawful agreement. *Id.; accord United States v. Flaherty,* 668 F.2d 566, 580 (1st Cir.1981). Due to the clandestine nature of criminal conspiracies, the law recognizes that the illegal agreement may be either "express or tacit" and that a " 'common purpose and plan may be inferred from a development and collocation of circumstances.' " *Rivera–Santiago,* 872 F.2d at 1079 (quoting *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)); *see also Drougas,* 748 F.2d at 15. The government need not establish that the defendants knew or agreed upon every detail of the conspiracy. "All that is required is to show 'the essential nature of the plan and their connections with it.' " *Rivera–Santiago,* 872 F.2d at 1079 (quoting *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947)); *see also United States v. Hinds,* 856 F.2d 438, 443 (1st Cir.1988).

■ Without weighing witness credibility, *United States v. Serrano,* 870 F.2d 1, 5 (1st Cir.1989) (citing *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978)), we assess the sufficiency of the evidence, including all reasonable inferences, in the light most favorable to the government, *United States v. McNatt,* 813 F.2d 499, 502 (1st Cir.1987), with a view to whether a rational jury could have found the defendant guilty beyond a reasonable doubt. Thus viewed, there was sufficient evidence to support the conspiracy convictions against Edwin and Rafael Sanchez.

Rafael Sanchez advised Lagos early on that a friend had arrived with a large shipment of cocaine which would be available for purchase. Rafael introduced Lagos to Edwin and discussed the price and purity of the cocaine. Finally, Rafael arranged the meeting between Edwin and Lagos on the evening the cocaine exchange took place. Although Rafael was not present during the actual exchange, a jury might infer, altogether reasonably, that Rafael intended to participate in the conspiracy to acquire cocaine for distribution, as evidenced by his instrumental role in locating

the cocaine and in bringing the other participants together.

As for Edwin Sanchez, the evidence established that he and brother Rafael negotiated the price and quality of the cocaine with Lagos. Further, Edwin Sanchez and Rosario personally delivered the cocaine to Lagos, expecting to receive in return, not a briefcase containing a phone book, but more than $280,000 in cash. Therefore, the jury reasonably concluded that Edwin Sanchez intended to participate in the conspiracy to possess cocaine for distribution.

## B. *Count II*

Rafael Sanchez appeals from the denial of his motion for judgment of acquittal under count II, which charged all three defendants with the substantive offense of possessing cocaine for distribution. Rafael argues that the district court committed reversible error by instructing the jury on "aiding and abetting" and on vicarious criminal liability under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), inasmuch as count II did not provide fair notice that he was being charged under either theory.

### (i) "Aiding and Abetting"

Notwithstanding the fact that count II did not charge aiding and abetting, or mention 18 U.S.C. § 2, the jury was instructed that the defendants could be convicted if they aided and abetted the substantive offense of possessing cocaine with intent to distribute.[1] Rafael Sanchez contends that an "aiding and abetting" instruction in these circumstances violated his sixth amendment right to "be informed of the nature and cause of the accusation" against him.

■ The contention fails, essentially because "aiding and abetting" is not a separate offense. *United States v. Thirion*, 813 F.2d 146, 151 (8th Cir.1987); *United States v. McKnight*, 799 F.2d 443, 445 (8th Cir.1986); *see also United States v. Moya–Gomez*, 860 F.2d 706, 756 (7th Cir.1988). Title 18 United States Code, section 2, "simply makes those who aid and abet in a crime punishable as principals." *Thirion*, 813 F.2d at 151 (quoting *McKnight*, 799 F.2d at 445). Aiding and abetting is "an alternative charge in every ... count, whether explicit or implicit." *McKnight*, 799 F.2d at 445 (quoting *United States v. Walker*, 621 F.2d 163, 166 (5th Cir.1980)). *Accord United States v. Bullock*, 451 F.2d 884, 888 (5th Cir.1971); *United States v. Lester*, 363 F.2d 68, 72 (6th Cir.1966). A defendant can be convicted of aiding and abetting the commission of a substantive offense "upon a proper demonstration of proof so long as no unfair surprise results." *United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir.1984); *accord United States v. Tucker*, 552 F.2d 202, 204 (7th Cir.1977).

■ All courts of appeals which have considered the matter have concluded that an "aiding and abetting" instruction may be given even though the indictment neither alleges aiding and abetting nor adverts to 18 U.S.C. § 2.[2] We, too, now hold that the government may rely on an "aiding and abetting" theory, although the indictment neither alleges nor adverts to it, except on a showing of unfair surprise.[3]

---

1. Rosario objects to the aiding and abetting charge on the same ground. We note, however, that there was sufficient independent evidence that Rosario, unlike Rafael, possessed the suitcase containing the cocaine. Thus, Rosario's conviction under count II did not depend on the "aiding and abetting" or *Pinkerton* theories.

2. *See United States v. Taylor*, 464 F.2d 240, 241 n. 1 (2d Cir.1972); *United States v. Forsythe*, 560 F.2d 1127, 1136 n. 15 (3d Cir.1977); *United States v. Duke*, 409 F.2d 669, 671 (4th Cir.1969); *United States v. Gordon*, 812 F.2d 965, 969 (5th Cir.1987); *United States v. Lester*, 363 F.2d at 72; *United States v. Moya–Gomez*, 860 F.2d at 756;

*United States v. Thirion*, 813 F.2d at 151; *United States v. Sannicandro*, 434 F.2d 321, 324 (9th Cir.1970); *Lawrence v. United States*, 357 F.2d 434, 438 (10th Cir.1966); *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir.1984).

3. We nevertheless consider it better practice, "whenever a basis for a charge of aiding and abetting is anticipated before trial, ... to have the indictment framed in the alternative or at least to have noted upon it a reference to 18 U.S.C.A. § 2," *United States v. Duke*, 409 F.2d at 671; *see also Galiffa*, 734 F.2d at 312 ("preferable" to charge 18 U.S.C. § 2 in indictment).

■ Rafael Sanchez and Gregorio Rosario were charged with conspiracy and with the substantive offense of possessing cocaine for distribution. The evidence adduced on those charges established that these defendants aided and abetted the substantive offense charged in count II by assisting the sale of cocaine to Lagos. Although the indictment did not allude to "aiding and abetting," it placed the defendants on notice of the essential nature of the charges against them under count II. Moreover, there was no unfair surprise, as the government, prior to trial, submitted a proposed jury instruction on "aiding and abetting."

### (ii) Pinkerton Charge

Rafael Sanchez similarly claims that the jury should not have been given a *Pinkerton* instruction.

■ Under the *Pinkerton* theory a conspirator may be subjected to vicarious criminal liability for a substantive crime committed by a co-conspirator in effecting their conspiracy. We have held that the district court may give a *Pinkerton* charge even though the indictment does not plead vicarious liability. *See, e.g., United States v. Stackpole*, 811 F.2d 689, 696 (1st Cir. 1987); *United States v. Alvarez*, 626 F.2d 208, 210 (1st Cir.1980). Indeed, every court to consider the matter has held that "the individual substantive counts need not make reference to co-conspirator liability in order for the jury to be so instructed," *Thirion*, 813 F.2d at 152; *see also United States v. Carroll*, 510 F.2d 507, 509 (2d Cir.1975); *United States v. Owen*, 492 F.2d 1100 (5th Cir.1974); *United States v. Alsondo*, 486 F.2d 1339 (2d Cir.1973) (on petition for rehearing). As with the "aiding and abetting" theory, vicarious co-conspirator liability under *Pinkerton* is not in the nature of a separate offense. *Thirion*, 813 F.2d at 151. Thus, the *Pinkerton* charge was warranted in these circumstances on the same reasoning that supported the "aiding and abetting" instruction.

Counts I and II gave the defendants adequate notice of the essential nature of the charges against them. Prior to trial, the government submitted a proposed *Pinkerton* instruction, thereby alerting Rafael to the government's theory of criminal liability under count II. Thus, as concerns Rafael's vicarious liability under count II, there was no unfair surprise. Since there was sufficient evidence to enable the jury to conclude, beyond a reasonable doubt, that Edwin and Rafael Sanchez and Gregorio Rosario were members of the same cocaine conspiracy, the *Pinkerton* charge was proper.[4]

### C. "Ineffective Assistance" Claims

■ The three defendants assert deprivations of their sixth amendment right to the effective assistance of trial counsel. Their claims were not raised in the district court. As we often remind criminal defendants, "it is ordinarily the rule that a claim of inadequate representation will not be determined on direct appeal when the claim has not been raised in the district court." *United States v. Paz Uribe*, 891 F.2d 396, 398 (1st Cir.1989) (quoting *United States v. Hoyos–Medina*, 878 F.2d 21, 22 (1st Cir. 1989)). *See also United States v. Costa*, 890 F.2d 480, 483 (1st Cir.1989); *United States v. Carter*, 815 F.2d 827, 829 (1st Cir.1987).

There are two sound reasons for the rule. First, the reviewing court benefits from careful preliminary consideration by the trial judge, who is better situated to

**4.** We are not confronted with the sort of "marginal case" in which the *Pinkerton* instruction sometimes causes concern. *See, e.g., Stackpole*, 811 F.2d at 696; *United States v. Sperling*, 506 F.2d 1323, 1341–42 (2d Cir.1974). In *Sperling*, 506 F.2d at 1341–42, the Second Circuit appropriately cautioned that a *Pinkerton* charge "should not be given as a matter of course," particularly where the jury is being asked to make the converse inference; that is, to infer, on the basis of a series of disparate criminal acts, that a conspiracy existed. In the present case there was ample evidence that Rafael Sanchez was a member of the alleged conspiracy to possess cocaine for distribution. The jury was instructed to consider whether Rafael belonged to the same cocaine conspiracy (independently established under count I) in furtherance of whose unlawful object either of Rafael's co-conspirators committed the substantive offense of possessing cocaine for distribution as charged in count II.

appraise defense counsel's representation in the district court proceedings. *See, e.g., Hoyos–Medina,* 878 F.2d at 22. Second, "ineffective assistance" claims normally require "the resolution of factual issues as well as inquiries into other evidentiary matters that cannot effectively be handled for the first time by a court of appeals." *See Costa,* 890 F.2d at 483. "[W]hile some ineffective assistance claims might be capable of presentation solely on the record of the criminal trial itself, most such claims require the independent development of evidence outside of, and collateral to, the criminal proceedings." *Brien v. United States,* 695 F.2d 10, 13 (1st Cir.1982). Usually these claims are better left to collateral review under 28 U.S.C. § 2255. *See Costa,* 890 F.2d at 483.

The Sanchezes base their "ineffective assistance" claims on two grounds. First, their counsel did not request that the court allow the jury to hear a tape recording produced by the government in response to a discovery request. Second, their counsel did not obtain daily transcripts with which to impeach government witnesses. Without a more developed factual record, we are unable to evaluate the merit of these claims. "If the defendant[s] wish[ ] to pursue th[ese] claim[s], [they] may begin a collateral proceeding in accordance with 28 U.S.C. § 2255." *Paz Uribe,* 891 F.2d at 398.

▬ At the sentencing hearing, Rosario claimed that he had been denied effective assistance of *trial* counsel. Rosario filed a *pro se* motion for new trial as well, which relied in part on an "ineffective assistance" claim. At the hearing on the motion for new trial, Rosario was represented by *new* counsel who did not mention the ineffective assistance claim. Rosario now asserts that *pretrial* counsel failed to file and/or pursue various pretrial discovery and suppression motions, including suppression motions relating to the voluntariness of Rosario's confession and the legality of the search of Rosario's apartment. Since the "ineffective assistance" claim was not pursued at the hearing on the motion for new

trial, "the issue really cannot be said to have been raised or explored properly below." *See Costa,* 890 F.2d at 483. Thus, without a more fully developed record, we cannot conduct effective review of Rosario's "ineffective assistance" claims on direct appeal.

### D. *The Guideline Sentences*

Under the Sentencing Guidelines, the district court imposed 360–month prison sentences on Edwin and Rafael Sanchez. The Sanchezes challenge these sentences on five grounds: first, the district court should have departed downward from the guideline sentencing range; second, the district court erroneously denied their requests to compel the attendance of Albert Lagos, the government's informant, at the sentencing hearing; third, their sentences violated due process; fourth, their "criminal history" classifications as "career offenders" were based on erroneous evaluations of their prior drug conviction records; and, finally, their sentences as "career offenders" under U.S.S.G. § 4B1.1, United States Sentencing Commission, *Guidelines Manual,* § 4B1.1 (Nov.1987), contravened 21 U.S.C. § 851.

We conclude that none of these assignments of error, alone or in combination, warrants disturbing the sentence of either defendant.

### (i) Downward Departure

▬ The Sanchezes attempt to appeal the district court's refusal to impose a sentence below the guideline sentencing range pursuant to U.S.S.G. § 5K2.10, p.s. In particular, defendants contend that the ten year hiatus since their last previous drug convictions suggests that the current transaction represents an "aberration," rather than an indication of their criminal proclivities. As we are without appellate jurisdiction, we dismiss their claims without discussion. *United States v. Tucker,* 892 F.2d 8 (1st Cir.1989) (district court decision not to depart below guideline sentencing range, not appealable).[5]

---

5. Other courts of appeals are of the same mind.

*See, e.g., United States v. Colon,* 884 F.2d 1550

#### (ii) Attendance of Lagos

■ Edwin and Rafael Sanchez contend that the district court erroneously refused to compel the government's informant and chief witness, Albert Lagos, to attend their sentencing hearings. The defendants assert that cross-examination of Lagos could have demonstrated entrapment, thereby establishing a basis for a downward departure pursuant to U.S.S.G. § 5K2.10, p.s. The district court refused their request because it found that Lagos had been subjected to "lengthy, vigorous and probing" cross-examination at trial.

Guideline section 5K2.10 allows the court to sentence below the sentencing range "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior...." *Id.* Without acceding to defendants' characterization of Lagos as a "victim," and his conduct as "wrongful," we conclude that section 5K2.10 is unavailing. Section 5K2.10 "usually [is] not ... relevant in the context of non-violent offenses." *Id.* Moreover, the Sentencing Commission's example of an "unusual" circumstance in which section 5K2.10 might apply in the case of a non-violent crime (i.e., when "an extended course of provocation and harassment might lead a defendant to steal or destroy property in retaliation") bears no likeness to the present circumstances.

The district court did not err in declining to compel Lagos to attend the sentencing hearings.

#### (iii) Due Process

The Sanchezes challenge their sentences on due process grounds as well.

■ First, they argue that the Sentencing Guidelines violate their due process right to a fair sentencing determination in that the district court was permitted to consider sentencing information not established beyond a reasonable doubt. *See United States v. Davis,* 715 F.Supp. 1473 (C.D.Cal.1989).[6] The government need not demonstrate beyond a reasonable doubt every evidentiary consideration which enters into a sentencing determination under the Sentencing Guidelines. *United States v. Wright,* 873 F.2d 437, 441 (1st Cir.1989).[7] Insofar as disputed factors were considered by the sentencing court, the present defendants were accorded a reasonable opportunity to rebut the challenged information. Due process requires no more. *See United States v. Fogel,* 829 F.2d 77, 90 (D.C.Cir.1987) (due process requires that sentence not be based on false information and that defendant be given opportunity to rebut challenged information); *United States v. Collins Spencer Catch the Bear,* 727 F.2d 759, 761 (8th Cir.1984) (same).

---

(2d Cir.1989); *United States v. Denardi,* 892 F.2d 269 (3d Cir.1989); *United States v. Buenrostro* 868 F.2d 135 (5th Cir.1989); *United States v. Draper,* 888 F.2d 1100 (6th Cir.1989); *United States v. Franz,* 886 F.2d 973 (7th Cir.1989); *United States v. Evidente,* 894 F.2d 1000 (8th Cir.1990); *United States v. Fossett,* 881 F.2d 976 (11th Cir.1989).

6. Defendants rely entirely on *Davis,* which held the Sentencing Reform Act of 1984 unconstitutional because it "required" the court to consider sentencing information neither "introduced at trial [n]or proved beyond a reasonable doubt." *Davis,* 715 F.Supp. at 1476. We are aware of no court which presently follows *Davis. See, e.g., United States v. Ross,* 905 F.2d 1050, 1054 (7th Cir.1990); *United States v. Restrepo,* 903 F.2d 648 (9th Cir.1990); *United States v. Frederick,* 897 F.2d 490, 493 (10th Cir.1990); *United States v. Candito,* 892 F.2d 182, 186 (2d Cir.1989).

7. *See, e.g., United States v. Wilson,* 900 F.2d 1350, 1353 (9th Cir.1990) (citing to appellate cases which hold that due process does not require the establishment, beyond a reasonable doubt, of facts underlying sentencing determinations under the Sentencing Guidelines.) The Guidelines require that the sentencing information which the sentencing judge considers bear "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). All courts of appeals which have considered the issue, including our own, *see Wright,* 873 F.2d at 441, have held that due process is satisfied if the facts relied on in Guidelines sentencings are proven by a preponderance of the evidence. *See United States v. Guerra,* 888 F.2d 247, 251 (2d Cir.1989); *United States v. McDowell,* 888 F.2d 285, 291 (3rd Cir.1989); *United States v. Urrego–Linares,* 879 F.2d 1234, 1238 (4th Cir. 1989); *Wilson,* 900 F.2d at 1354.

■ The second due process claim the Sanchezes make is that the district court applied the Guidelines too mechanically and did not take adequate account of their individual circumstances. The present contention is foreclosed, however, as we, *see United States v. Seluk*, 873 F.2d 15, 16 (1st Cir.1989), like other courts of appeals,[8] have held that the Sentencing Guidelines impose no unconstitutional constraints on individualized sentencing, considering the broad range of variables cognizable by the sentencing court and its discretion to depart in appropriate circumstances.

(iv) Criminal History Classifications

■ The Sanchezes contend that they were assigned erroneous "criminal history" classifications under U.S.S.G. § 4A1.2(e) on the basis of prior criminal convictions for possessing and distributing narcotics, for which each was sentenced to six years in the Massachusetts Correctional Institute at Concord but actually served less than "one year and one month," *see* U.S.S.G. § 4A1.2(e)(1). Therefore, they argue, the district court erred by treating their "Concord sentences" as felonies.

Their argument is immaterial to the "career offender" classification criteria established under the Guidelines. Sentencing Guidelines section 4B1.1 defines a "career offender" as a defendant who (1) was at least eighteen at the time of the present offense, (2) was convicted of "a felony that is ... a controlled substance offense," and (3) "has at least two prior felony convictions of ... a controlled substance offense." U.S.S.G. § 4B1.1. At the time these defendants were sentenced, a "controlled substance offense" included "distributing, dispensing, or possessing with intent to ... distribute, or dispense, a controlled substance (or counterfeit substance)." *Id.* § 4B1.2, comment (n. 2).[9] A "prior felony conviction" is defined as "a prior adult federal or state conviction for an offense *punishable* by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and *regardless of the actual sentence imposed.*" *Id.* § 4B1.2, comment (n. 3) (emphasis added). As the application note makes manifest, the type and term of the sentence previously imposed or served are immaterial to the "career offender" classification required under the Guidelines. Instead, only the *maximum term of imprisonment* under the controlling criminal statute may be considered in determining whether there was a prior felony conviction.

Rafael Sanchez was convicted of three prior offenses relating to controlled substances, each subject to a statutory maximum prison term of fifteen years.[10] Edwin Sanchez previously was convicted of two controlled substance offenses,[11] one carry-

---

8. *See, e.g., United States v. Vizcaino*, 870 F.2d 52, 53 (2d Cir.1989); *United States v. Frank*, 864 F.2d 992, 1009–10 (3d Cir.1988); *United States v. Bolding*, 876 F.2d 21, 22 (4th Cir.1989); *United States v. Woolford*, 896 F.2d 99, 101–02 (5th Cir.1990); *United States v. Jacobs*, 877 F.2d 460, 462 (6th Cir.1989); *United States v. Pinto*, 875 F.2d 143, 144–45 (7th Cir.1989); *United States v. Sciacca*, 879 F.2d 415, 416 (8th Cir.1989); *United States v. Brady*, 895 F.2d 538, 539 (9th Cir. 1990); *United States v. Thomas*, 884 F.2d 540, 542–43 (10th Cir.1989); *United States v. Erves*, 880 F.2d 376, 379 (11th Cir.1989).

9. Effective November 1, 1989, U.S.S.G. § 4B1.2 was amended, and application note 2, defining "controlled substance offense," was deleted. Guidelines section 4B1.2(2) now defines a "controlled substance offense" as "an offense under a federal or state law prohibiting the manufacture, import, export, or distribution of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a

counterfeit substance) with intent to manufacture, import, export, or distribute." U.S.S.G. § 4B1.2(2) (Nov.1989). Application note 3, defining "prior felony conviction," has not been amended.

10. In 1973, Rafael was convicted of possessing a narcotic (heroin) with intent to distribute. In June of 1978, he was convicted of possessing a Class A substance with intent to distribute. In July of the same year, he was convicted of possessing a controlled substance (heroin) with intent to distribute. Under Massachusetts law, each violation was punishable by a fifteen year prison term. M.G.L. c. 94C § 32E.

11. On June 2, 1976, Edwin was convicted of possessing a Class B substance (cocaine) with intent to distribute, an offense punishable by a maximum prison term of ten years. In 1978, he was convicted of distributing Class A narcotics (heroin) punishable at the time by a maximum term of fifteen years. M.G.L. c. 94C § 32E.

ing a maximum term of fifteen years and the other ten years. Since all of their prior convictions for crimes involving controlled substances were *punishable* by prison terms in excess of one year, the Sanchezes were correctly classified as "career offenders" under the Guidelines. *See* U.S.S.G. § 4B1.2 n. 3.

(v) Section 851

■■■ Edwin and Rafael Sanchez claim that the district court violated 21 U.S.C. § 851(a)(1) and denied their right to due process by sentencing them as "career offenders" under U.S.S.G. § 4B1.1.

Section 851(a)(1) requires the prosecutor to file an information particularizing the prior convictions on the basis of which a defendant "convicted of an offense *under this part*," (emphasis added), i.e., under 21 U.S.C. § 841 *et seq.*, is given an enhanced sentence.[12] The section 851(a)(1) enhancement notice requirement applies "to situations in which a convicted defendant's *statutory* minimum or maximum penalty is enhanced under [21 U.S.C. §§ 841, *et seq.*], and not to situations in which the defendant is assigned a guideline base offense level and receives an increased sentence...." which remains within the statutorily prescribed minimum-maximum range. *United States v. Wallace*, 895 F.2d 487, 490 (8th Cir.1990) (emphasis added). *Accord Hansen v. United States Parole Com.*, 904 F.2d 306 (5th Cir.1990).

These Guidelines sentences were not imposed as a consequence of the enhancement of either the minimum or the maximum sentence prescribed by 21 U.S.C. § 841(b)(1)(A). The government concedes that the defendants were subject to the statutory ten-year *minimum* sentence mandated by 21 U.S.C. § 841(b)(1)(A), rather than the twenty-year *minimum* which would have been applicable on account of

their prior felony drug convictions if the prosecutor had filed the section 851(a)(1) sentence enhancement information. Although their drug conviction records formed the basis for the Guidelines determination that the defendants are "career offenders," their 360-months' sentences were well below the life imprisonment term prescribed as the statutory *maximum* under section 841.

Therefore, neither section 851(a) nor any due process right was transgressed by these sentences.

### E. *Motions for New Trial*

■■■ The Sanchezes finally contend that the district court erroneously denied their motion for new trial, *see* Fed.R.Crim.P. 33, which was predicated on their allegation that the government, throughout pretrial discovery and trial, failed to reveal payments which its informant, Albert Lagos, received from the Commonwealth of Massachusetts for similar informant services in unrelated cases. The defendants moved during pretrial discovery for the production of "any material or information that can be used for the purpose of impeaching the credibility of any person the Government intends to call as a witness at the trial." The government responded with specific information concerning Lagos's criminal record and the large monetary payments and other non-monetary benefits received by Lagos from the Federal Bureau of Investigation and the Drug Enforcement Administration. At trial, Lagos was thoroughly cross-examined about this information.

After trial, the defendants learned that Lagos had received substantial payments from the Commonwealth of Massachusetts as well. The defendants argue that the newly discovered evidence would have enabled them to further undermine Lagos's

---

**12.** The relevant part of section 851(a)(1) states:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the

person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1) (emphasis added). There is no Sentencing Guideline requirement which makes the filing of an information a condition precedent to sentence enhancement under the Guidelines.

credibility with the jury. Since Lagos's credibility was important to the government's case, defendants urge that the government's nondisclosure deprived them of their right to a fair trial. *See United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985); *United States v. Agurs,* 427 U.S. 97, 107–08, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976).

The government denies awareness, until after trial, that Lagos received payments from the Commonwealth of Massachusetts. Further, it contends that it was under no obligation to discover or produce information relating to payments Lagos received from the Commonwealth. The district court characterized the latter contention as "an invitation to very unpleasant consequences," but ruled, under our *Wright–Martin* standard, that the newly discovered evidence was merely cumulative and would not have led to the acquittal of any defendant. *See United States v. Wright,* 625 F.2d 1017, 1019 (1st Cir.1980); *United States v. Martin,* 815 F.2d 818 (1st Cir.1987).[13]

While *Wright–Martin* "ordinarily" provides the rule of decision governing motions for new trial based on newly discovered evidence, prosecutorial nondisclosure is subjected to a more stringent standard. *See United States v. Imbruglia,* 617 F.2d

1, 4 and n. 4 (1st Cir.1980); *Mains v. Butterworth,* 619 F.2d 83, 86 (1st Cir.1980); *United States v. Walgren,* 885 F.2d 1417, 1427–28 (9th Cir.1989). "If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance in the prosecutor's obligation to serve the cause of justice." *Agurs,* 427 U.S. at 111, 96 S.Ct. at 2401. Prosecutorial nondisclosure of exculpatory evidence requested by an accused "violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215. Since impeachment evidence is "exculpatory" under *Brady, United States v. Ingraldi,* 793 F.2d 408, 411 (1st Cir.1986), the question we ask in a prosecutorial nondisclosure setting is "whether the omitted evidence is of sufficient materiality to call for a new trial." *Imbruglia,* 617 F.2d at 4.[14]

The Supreme Court in *Bagley* formulated a uniform standard of materiality for general application in all nondisclosure cases. *See Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383 ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense,

13. The *Wright–Martin* standard ordains that a new trial
ordinarily not be granted unless the moving party can demonstrate that (1) the evidence was unknown or unavailable to the defendant at the time of the trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant.
*Martin,* 815 F.2d at 824.

14. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 contrasts the materiality standard applicable to prosecutorial nondisclosure in response to a *specific* request from the defense, with the standard applicable when there has been no defense request or only a general one. In the latter circumstance, the Supreme Court concluded, on the one hand, that there was no constitutional requirement that the prosecution surrender its entire file to the defense. *Agurs,* 427 U.S. at 111, 96 S.Ct. at 2401. On the other hand, the Court rejected any

standard which would impose on the defendant "the severe burden of demonstrating that newly discovered [nondisclosed] evidence probably would have resulted in acquittal." *Id. Agurs* "did not define the standard of materiality applicable to a [nondisclosure in response to a specific request for discovery], but suggested that the standard might be more lenient to the defense than in the situation in which the defense makes no request or only a general request." *Bagley,* 473 U.S. at 681, 105 S.Ct. at 3383. Thus, the Supreme Court explicitly rejected the suggestion that *Agurs* had established that the materiality test for newly discovered evidence, not disclosed in response to a specific request, was whether the evidence "might have affected the outcome of the trial." *Bagley,* 473 U.S. at 681, 105 S.Ct. at 3383. *See, e.g., Imbruglia,* 617 F.2d at 4–5. According to *Bagley,* 473 U.S. at 681 n. 12, 105 S.Ct. at 3383 n. 12, the *Agurs* language does not establish a standard, but "merely explains the meaning of the term 'materiality.'"

the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."). *See also United States v. Pandozzi,* 878 F.2d 1526 (1st Cir. 1989) (applying *Bagley* standard to nondisclosure of evidence in government's possession).[15]

When determining whether newly discovered evidence is material, the "possibility" that the prosecutorial nondisclosure could have had an adverse effect upon the defense is assessed "in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a posttrial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." *Bagley,* 473 U.S. at 683, 105 S.Ct. at 3384 (Blackmun, J.); *see also Agurs,* 427 U.S. at 112–13, 96 S.Ct. at 2401–02. Due to its "inherently fact-bound nature," *Bagley,* 473 U.S. at 685, 105 S.Ct. at 3385 (White, J., concurring), the district court's determination on the materiality of newly discovered evidence in prosecutorial nondisclosure cases is ordinarily accorded deference, *see Pandozzi,* 878 F.2d at 1528; *Imbruglia,* 617 F.2d at 7; *Agurs,* 427 U.S. at 113–14, 96 S.Ct. at 2402.

Lagos received $11,600 from the Commonwealth of Massachusetts for services in criminal investigations unrelated to the present case. At trial, he admitted receiving more than $100,000, as well as nonmonetary benefits, from federal agencies. Lagos was thoroughly cross-examined about the large monetary payments and other benefits received from federal agencies in connection with this case, as well as other federal investigations. *See United States v. Roberts,* 848 F.2d 906, 908 (8th Cir.1988) (in light of "vigorous and thorough cross-examination" at trial, held: suppressed

*Brady* material would not have enabled defense to further undermine witness credibility so as to alter outcome of trial). We consider it significant to the present analysis not only that the newly discovered Commonwealth payments were small in comparison with the federal largesse and that the federal government did not know of their existence, but that the federal payments about which the jury was fully informed were for services similar to those provided to the Commonwealth, except that the latter did not relate to the present case. We note further that the defense made no specific pretrial discovery request for informant payments to Lagos from any source, much less from state or local sources in unrelated cases. Moreover, it must be remembered that the government's nondisclosure did not preclude a broader ranging cross-examination of Lagos to include payments he may have received from state and local government sources.

Finally, and most importantly, the newly discovered evidence was merely cumulative. Thus, under the *Bagley* standard, the motion for new trial was correctly denied as the availability of the newly discovered cumulative evidence could not undermine confidence in the fairness of the trial. Since cumulative evidence is not "material to either guilt or punishment," the unavailability of cumulative evidence does not deprive the defendant of due process.[16] *See United States v. Weintraub,* 871 F.2d 1257, 1264 (5th Cir.1989) (undisclosed evidence cumulative, therefore not material to conviction); *Smith v. Kelso,* 863 F.2d 1564, 1573 (11th Cir.1989) (cumulative evidence fails to establish that nondisclosure undermined confidence in outcome of trial); *United States v. Shelton,* 588 F.2d 1242, 1248 (9th Cir.1978) ("Impeachment evidence, even that which tends to further undermine the credibility of the key

**15.** Before *Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 we expressed reservations whether the "probable acquittal" standard would apply to newly discovered evidence useful only for impeachment purposes, *see United States v. Strahl,* 590 F.2d 10, 13 (1st Cir.1978), and cases cited therein, but left the matter open, *see United States v. Imbruglia,* 617 F.2d at 7; *Mains v. Butterworth,* 619 F.2d at 86. Of

course, the matter has been resolved by *Bagley,* which involved impeachment evidence.

**16.** Like the learned district judge, we too are reminded of the observation "about the fellow who knew how to spell banana, but ... didn't know when to stop. It [would have been] the same thing over and over again."

Government witness whose credibility has already been shaken due to extensive cross-examination, does not create a reasonable doubt that did not otherwise exist when that evidence is cumulative or collateral.") (*Brady* material suppressed by government) (citations omitted).

### F.  *Rosario's Pro Se Claims*

In two supplemental *pro se* briefs, Rosario asserts four separate claims not raised at trial.

▮ First, Rosario attempts to assert a due process claim based on alleged prosecutorial misconduct in introducing perjured testimony adverse to Rosario, while withholding exculpatory evidence. The apparent basis for this claim is a tape recording which the government allegedly made of a conversation among law enforcement officers on surveillance duty. Rosario does not provide us with the tape or with a transcript. We are not informed as to the present whereabouts of the tape, or how and when Rosario learned of its existence. Yet Rosario purports to know of its existence and asserts several conclusory allegations of official wrongdoing based on the tape. We are unable to make an intelligent assessment of these claims. It is "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990). Nevertheless, in view of Rosario's *pro se* status and the serious nature of the due process claim, we dismiss the claim without prejudice to defendant's right to present it on a proper record pursuant to 28 U.S.C. § 2255. *See also infra* note 17.

▮ Second, Rosario asserts a Speedy Trial Act violation, under 18 U.S.C. § 3161(c), based on the 158–day delay between his indictment and trial. All but 31 days, at most, were excludable as delay occasioned by the pendency of motions filed by Rosario or by the Sanchezes, with whom he was joined for trial. *See id.* § 3161(h)(1)(F); *United States v. Noone*, 913 F.2d 20, 26 (1st Cir.1990).

▮ Third, Rosario asserts that the district court deprived him of due process by refusing to allow him to attend the hearing on his *pro se* motion for new trial. There was no due process violation. As the district court noted at the consolidated hearing on defendants' motions for new trial, due process guarantees an accused's "right to be present at any stage of the criminal proceeding that is critical to its outcome if [the accused's] presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). Since the issue under consideration at the hearing on the motion for new trial was the legal one whether the government's nondisclosure of Commonwealth payments to Lagos was sufficient to warrant a new trial, we are not persuaded that appellant's presence would have contributed to the "fairness of the proceeding." *Compare* Fed.R. Crim.P. 43(a) ("defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial ..., and at the imposition of sentence....") *with* Fed.R. Crim.P. 43(c)(3) ("defendant need not be present.... (3) At ... argument upon a question of law.").

Finally, we are unable to discern any unconstitutionality in the district court directive that Rosario's counsel of record, retained *after* trial, represent Rosario at the hearing on the motion for new trial. Rosario informed the district court in advance of the hearing that he had dismissed post-trial counsel and wished to appear *pro se*. At the hearing on the motion for new trial, Rosario's post-trial counsel appeared and advised the court that he had been asked by Rosario to withdraw; yet he had not withdrawn his formal appearance. As we have just noted, the district court, under *Kentucky v. Stincer*, 107 S.Ct. at 2667, denied Rosario's request to appear *pro se* and determined that Rosario's retained counsel was competent to represent him on the legal issues raised by the motion for new trial. Rosario asserts no claim that retained counsel's representation at the hearing on the motion for new trial was

ineffective.[17]

*The district court judgments are affirmed.*

---

17. However, there is an allegation that the same attorney who represented Rosario at the hearing on the motion for new trial rendered "ineffective assistance" prior to the hearing. It is contained in what purports to be a typed copy of a letter, dated 9/13/85.

On or about May 9, 1989 Honorable Woodlock J. postpone (sic) sentensing (sic) date from May 9 too (sic) May 23, 1989. So that you had some time to investigate the perjury that I pointed out to him on the part of the government witnesses. For some reson (sic) you never comply (sic) with my request, to point out the perjury on (sic) the (sic) of the government witnesses. After I was sentence (sic) again I requested of you to contact the United States Attorney (sic) Office and explaned (sic) to him that we do have a tape recording that would prove the perjury on the part of the government witnesses, who testified in my case and that due to fales (sic) testimony the jury found me gilty (sic). As my record shows you never complyed (sic) with my request. At this time I respectfully do ask of you to file a motion to withdraw from my case # 88–246–WD at once.

Letter of 9/13/85 (marked by *pro se* appellant as "A–2"). This letter charges counsel with ineffective assistance in not investigating Rosario's allegations of perjury by government witnesses. We surmise that these allegations may be related to the due process claim Rosario asserts in his *pro se* supplemental brief. *See supra* at 26. Our disposition of the present appeal is without prejudice to Rosario's right to raise a sixth amendment ineffective assistance claim on these grounds pursuant to 28 U.S.C. § 2255.