**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 04-2317

ROBERT M. JOOST,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

Robert M. Joost on brief pro se.
Donald C. Lockhart, Kenneth P. Madden, Assistant U.S. Attorneys, and Robert Clark Corrente, United States Attorney, on brief for appellee.

April 9, 2007

**Per Curiam**.  Petitioner Robert Joost appeals pro se from a district court decision dismissing his 28 U.S.C. § 2255 petition as untimely.  See 336 F. Supp. 2d 185 (D.R.I. 2004).  He there sought to advance a single claim under Brady v. Maryland, 373 U.S. 83 (1963), based on documents he obtained through a post-judgment Freedom of Information Act request, see 5 U.S.C. § 552 (FOIA).

Joost received a certificate of appealability (COA) to address the timeliness issue; but that issue turns out to raise difficult questions which we are reluctant to resolve in this pro se setting, and which might well require a remand for further inquiries.  Further, the substantive Brady claim, which the parties have adequately briefed, proves to lack merit, so we expand the scope of the COA sua sponte and affirm on that basis alone.  Villot v. Varner, 373 F.3d 327, 337 n.13 (3d Cir. 2004).

In separate trials, Joost was convicted of conspiring to obstruct commerce by robbery of an armored car, 18 U.S.C. § 1951 (the Hobbs Act), and of being a felon in possession of a firearm, id. § 922(g).  This court affirmed the former conviction, see 1996 WL 480215 (1st Cir. 1996) (unpublished), but vacated the latter because of the lack of an entrapment instruction, see 92 F.3d 7 (1st Cir. 1996).  Joost was again tried and again convicted of the firearms charge, and we

affirmed. See 133 F.3d 125 (1ˢᵗ Cir. 1998). The Supreme Court denied certiorari on April 20, 1998.

To establish a Brady violation, Joost would need to demonstrate that the government suppressed exculpatory or impeaching evidence valuable to him and that prejudice ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Conley v. United States, 415 F.3d 183, 188 (1ˢᵗ Cir. 2005). The likelihood of a different result is the key issue in assessing prejudice. United States v. Bagley, 473 U.S. 667, 682 (1985).

Joost relied on an entrapment defense at trial--a defense that he now claims would have been significantly bolstered by the FOIA material. The entrapment defense requires proof of improper government inducement--usually undue pressure--to commit the crime, and lack of predisposition by the defendant to engage in criminal conduct. United States v. Gendron, 18 F.3d 955, 961 (1ˢᵗ Cir. 1994).

The original investigation of Joost spanned four months, from March 23 to July 24, 1994, and initially focused on counterfeiting. Joost's partner (Tracy) was caught passing fake tokens at a nearby casino, agreed to cooperate with state authorities and introduced Joost to detectives DelPrete and O'Donnell, who pretended to be petty thieves; one claimed to have a cousin employed in the casino's cashier cage.

Joost was struggling financially at the time and

readily accepted the detectives' offer to pay him fifty cents for each counterfeit dollar token.  During April, the focus of the investigation broadened as Joost began speaking of other criminal ventures, both past and future.  Joost mentioned dozens of possibilities including robbery of an armored car in Rhode Island and of a tractor trailer or warehouse in Pennsylvania.

Joost later testified that he was just trying to sustain the detectives' interest.  And he did tell the detectives (which one of them confirmed at trial) that he did not perform armed robberies, noting that because of his past convictions he would face severe penalties if caught with a firearm.  Nonetheless, it was Joost who first mentioned the possible use of a gun, stating on April 24 that the armored-car robbery would require a gun.

The detectives several times asked for a gun and Joost stated he might be able to comply, but nothing was forthcoming.  The trio drove to Pennsylvania on May 28 with the idea of robbing a tractor trailer or related warehouse, but--by arrangement with the authorities--the scheme was aborted by a police stop.  O'Donnell later testified simply that: "We had a meeting between the State Police and the FBI, and it was determined that we couldn't allow it to happen."

On July 21 the detectives told Joost that they would need no more counterfeit coins. They knew at the time that he was in financial difficulties and facing imminent foreclosure on his home. The detectives proposed a plan to rob a Cape Cod nightclub and asked Joost once again to procure a firearm. After a lengthy discussion in which the need for a gun was mentioned some six times, Joost agreed to obtain one. On July 24, the day of the supposed robbery, he handed the detectives a 25-caliber Barretta, prompting his arrest.

This, with additional detail, was the gist of what the jury learned at Joost's retrial. An entrapment instruction was given but a guilty verdict was again returned. The main question now before us is whether there is any reasonable likelihood that the result would have been different if, at the time of the trial, Joost had had available three FBI documents he later received in response to his FOIA request.

These documents comprise two teletypes and one airtel written in the second half of May 1994. They discuss possible means by which the FBI, in coordination with local police, could prevent the planned May 28 trailer theft in Pennsylvania from occurring. A principal goal, the documents explain, was to do so without arresting Joost so that he could continue plotting the robbery of an armored car and thereby receive a higher sentence.

Based on conversations with the federal prosecutor, the FBI noted in one report that Joost would likely receive "only a 6 month sentence" for the counterfeiting charge and "only a 10 to 16 month sentence" for the trailer theft, but would get "at least a 15 year sentence" for an armored-car robbery. "[I]t is therefore operationally desirable to dissuade him from this [trailer theft] crime in lieu of a Hobbs Act [offense]." Other comments to the same effect are as follows:

- the undercover officers "have pressed Joost to show them the armed courier target";

- "[t]he second desirable result is that Joost and the unsub [unidentified subject] not be arrested, but indicted at a later date";

- "As stated [i]n 5/19/94 teletype ..., the purpose of the operation is to fully [material deleted]. This should result in a fifteen year sentence of Joost, a career criminal.";

- any search warrant must not "expose the UCOs [undercover officers] in order that Joost will conspire with the UCOs to commit a Hobbs Act armed courier robbery";

- "The UCOs will encourage this abandonment of the [Pennsylvania] theft."

The only reference to firearms is the following:

Joost has clearly stated that no weapons are to be used on this [trailer] theft as he is fully aware of the extensive jail time he would face for possessing a weapon. UCOs are aware that if Joost at any point in the ... operation possesses a weapon he will be arrested immediately. [The federal prosecutor] has

-6-

> advised that the possession of a weapon by
> Joost, in light of his arrest record, will
> sentence him to a fifteen (15) year jail
> term.

It is clear from this material, as it was from the court testimony, that the agents were seeking to direct Joost's energies to a high-penalty armored-car robbery or firearms crime rather than the other serious ventures which did not involve firearms. But there is nothing in the details provided by the FOIA material that alters the main thrust of what the jury learned at the trial.

Postponing an arrest in the expectation that a more serious offense might be attempted is ordinarily permissible. United States v. Lovasco, 431 U.S. 783, 792 (1977); cf. United States v. Winchenbach, 197 F.3d 548, 554 (1st Cir. 1999). It is unclear why Joost thinks that the details as to the authorities' efforts to frustrate the Pennsylvania robbery-- which was fictitious anyway--add anything to his case. It was simply a part of the sting.

The FOIA material does confirm that Joost "clearly stated that no weapons are to be used [during the Pennsylvania] theft" because of his "aware[ness] of the extensive jail time he would face for possessing a weapon." But this simply echoes testimony provided at trial by DelPrete--describing Joost's April 24 pronouncement that he did not perform armed robberies

and that, because of prior convictions, he would face severe, mandatory penalties if caught with a firearm.

If it had only been Joost who testified to his reluctance to engage in a firearms crime, then independent corroboration from FBI files might have been very valuable. But here Joost's reluctance, and the reason for it, were expressly acknowledged by one of the detectives testifying for the government and were confirmed by the delays in getting the firearm. Cf. United States v. Sanchez, 917 F.2d 607, 618 (1st Cir. 1990) ("the unavailability of cumulative evidence does not deprive the defendant of due process").

Joost had an entrapment defense minimally sufficient to get to a jury, but it was far from powerful. He was the first to raise the subject of firearms, proposed several criminal ventures requiring their use, and offered to personally transport any firearm used in a Fall River attack. In the end he was readily able to obtain a handgun. The additional detail derived from the FBI reports would not have altered the result.

Separately, Joost argues that the FOIA material shows that the detectives committed perjury at the firearms trial (and at his Hobbs Act trial). We have examined the specific allegations and transcripts with care and conclude that the discrepancies do not show perjury but at best furnish minor

points for cross examination in the firearms trial that would not have undermined the detectives' basic testimony.

Affirmed.