# United States Court of Appeals
## For the First Circuit

Nos. 06-1988, 06-2004
     06-2336, 06-2337

UNITED STATES OF AMERICA,

Appellee,

v.

ELÍAS RODRÍGUEZ-LOZADA AND
NELSON RIVERA-GARCÍA, AKA NELSON CONEJO,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
and DiClerico,* Senior District Judge.

Lydia Lizarríbar-Masini, for appellant Rivera-García, and
Rafael Anglada-Lopez, for appellant Rodríguez-Lozada.
     Thomas F. Klumper, Assistant United States Attorney, with whom
Rosa Emilia Rodriguez-Velez, United States Attorney, and Nelson
Pérez-Sosa, Assistant United States Attorney, were on brief for
appellee.

February 24, 2009

*Of the District of New Hampshire, sitting by designation.

**DICLERICO, District Judge**.    Nelson Rivera-Garcia and Elias Rodriguez-Lozada were tried together and convicted of drug and weapons crimes charged in two consolidated cases.    Rodriguez-Lozada ("Rodriguez") appeals his convictions and sentence.    He contends that the district court erred in denying his motions to suppress and to sever, that the jury did not represent a fair cross section of the community, and that the evidence was insufficient to sustain his convictions.    He also challenges his sentence.    Rivera-Garcia ("Rivera") raises three issues, all pertaining to his sentence.    Rodriguez's convictions and sentences on the gun charges are vacated; his convictions and sentences are otherwise affirmed. Rivera's sentence is affirmed.

I.

Members of the Rivera-Garcia family, including Nelson Rivera-Garcia, were involved in a drug trafficking organization, known as "Callejón de los Conejos," that operated in Ponce, Puerto Rico.    A federal grand jury returned an indictment, dated September 27, 2002, charging Rivera and nine others, including his three brothers and his mother, with a drug conspiracy that operated from 1995 until the date of the indictment (Criminal Case No. 02-391). An arrest warrant was issued for Rivera.

The United States Marshals Service learned that Rivera was living at an apartment in Cataño, Puerto Rico.    On September

-2-

29, 2003, Deputy United States Marshals and Puerto Rico Special Response Team ("S.R.T") officers went to that apartment to arrest Rivera. The S.R.T. officers knocked on the apartment door and announced their presence. One of the officers saw a man, whom he recognized, look out of a window near the door.[1] When no one responded to their knocking, the S.R.T. officers knocked down the door and entered the apartment behind an officer carrying a bullet-proof shield.

As the S.R.T. officers entered, they saw Rodriguez, wearing a leg brace but not using a crutch, walking toward them. They also saw Rivera looking out of the slightly-open bedroom door, holding a gun. The officers secured Rodriguez. Rivera closed and locked the bedroom door, but after an officer kicked the door twice, Rivera opened the door and came out without the gun. The officers secured Rivera.

The S.R.T. officers and federal marshals entered the bedroom. A crutch was on the bed. They found heroin, cocaine, packaging for the drugs, and money. Clothing and cell phones were also found in the room. They discovered a loaded Taurus 9 mm pistol under a pillow on the bed and a loaded Glock .45 caliber

[1]The S.R.T. officer recognized the man from an event the week before when S.R.T. officers and marshals went to an apartment complex in Rio Grande, Puerto Rico, where they believed Rivera was staying. The S.R.T. officer saw the same man, who was wearing a leg brace, get out of the marshals' vehicle. That man was later determined to be Rodriguez.

pistol in a box under the bed. They found additional equipment for processing and packaging drugs in the kitchen. Rivera and Rodriguez were arrested.

A grand jury indicted Rivera and Rodriguez on October 10, 2003, for crimes arising from the circumstances of their arrest in Cataño (Criminal Case No. 03-284). They were charged with possessing heroin, cocaine, cocaine base, and marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); with possession of firearms in furtherance of a drug trafficking scheme in violation of 18 U.S.C. §§ 924(c)(1) and (2); and with aiding and abetting each other in those crimes. Rivera and Rodriguez were each charged, separately, with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). In December of 2003, a grand jury returned a superseding indictment in Criminal Case No. 02-391, charging Rivera and Rodriguez with conspiring with ten other co-conspirators, including Rivera's brothers and mother, to possess with the intent to distribute heroin, cocaine, cocaine base, and marijuana in violation of § 841(a)(1). The court granted the government's motion to consolidate the two cases.

Rivera and Rodriguez moved to suppress the evidence found in the Cataño apartment, and a hearing was held on the motions on August 23, 2004. At the hearing, the court realized that an issue existed as to whether the defendants had standing to challenge the evidence. The court denied Rodriguez's motion, due to his lack of

-4-

standing, and gave Rivera an opportunity to brief the issue. A further hearing on Rivera's motion to suppress was held on November 5, 10, and 12, 2004. The court denied Rivera's motion on December 23, 2004.

Jury selection was held on April 27, 2005. On May 2, 2005, counsel gave their opening statements, and the government called its first witness. Evidence continued each day through Thursday, May 5. On May 6, Rodriguez filed a motion to sever his trial from Rivera's trial, arguing that if they were tried separately, Rivera would provide exculpatory testimony for Rodriguez, based on Rivera's testimony at the suppression hearing. The court held a hearing on Rodriguez's motion on Monday, May 9. The government objected to severance.

Despite noting that the motion to sever was untimely, the court decided to sever the trial of Criminal Case. No. 02-391 from Criminal Case No. 03-284. Under the new schedule, both defendants would be tried on the charges in Criminal Case No. 02-391 first, and a separate trial for Criminal Case No. 03-284 would be held at a later time. Following the lunch break the same day, however, the court reconsidered the severance issue and denied the motion as untimely. Trial proceeded, as originally planned, on the charges against both defendants in both cases.

After the conclusion of the government's case, both defendants moved for judgment of acquittal under Federal Rule of

Criminal Procedure 29.  The motions were denied.  On  May 18, 2005, the jury returned its verdict finding Rivera and Rodriguez guilty on all charges.[2]

Presentence reports were prepared and submitted.  Rivera objected to the drug quantities and other parts of his presentence report.  Rodriguez requested that new counsel be appointed to represent him for sentencing, and the court appointed new counsel on November 17, 2005.

Rodriguez's sentencing hearing was held on May 17, 2006. The court found a total offense level of 34 and a criminal history category of II resulting in an advisory guideline range of 168 to 210 months.  After reciting the factors set forth in 18 U.S.C. § 3553(a) and discussing the extent of Rodriguez's drug transactions, the nature of his offenses and his role in them, his injuries, and his possession of weapons, as noted in the presentence report, the court concluded that a sentence at the high end of the range was appropriate.  Rodriguez was sentenced to 210 months on Count One in Criminal Case No. 02-391; 210 months on Counts One, Two, and Three in Criminal Case No. 03-284; 60 months on Count Four; and 120 months on Count Seven of Criminal Case No. 03-284, all such terms to run concurrently.  In addition, he was sentenced to 60 months on

_____

[2]The judgment entered for Rodriguez on May 26, 2006, docketed in Criminal Case No. 02-391 at docket no. 498, indicates that Rodriguez pled guilty in that case.  That entry appears to be in error.

Count Five in Criminal Case No. 03-284, said sentence to be served consecutively to the other sentences imposed resulting in a total sentence of 270 months. Terms of supervised release were also imposed.

Rivera's sentencing hearing began on March 17, 2006, and was continued to August 16, 2006. The court found a base offense level of 38 and applied a four-level increase based on Rivera's leadership role, which yielded an adjusted offense level of 42. The court found a criminal history category of VI based on his status as a career criminal. A criminal history category of VI, combined with a total offense level of 42, resulted in an advisory guideline range of 360 months to life.

Rivera was sentenced to life in prison on Count One of Criminal Case No. 02-391. In Criminal Case No. 03-284, Rivera was sentenced to life in prison on Counts One and Three and to terms of 40 years on Count Two, 60 months on Count Four, and 120 months on Count Six, all such terms to run concurrently. In addition, he was sentenced to a term of 60 months for his conviction on Count Five in Criminal Case No. 03-284, which was to be served consecutively to his other sentences in Criminal Case No. 03-284. Terms of supervised release were also imposed.

Rivera and Rodriguez filed timely notices of appeal.

II.

On appeal, Rodriguez challenges the district court's denial of his motions, the make-up of the jury, the sufficiency of the evidence, and his sentence. Rivera raises issues pertaining to his sentence. We consider the issues raised by the parties in turn.

A. Rodriguez's Appeal

Rodriguez contends that the district court erred in denying his motion to sever his trial from Rivera's trial and in denying him a hearing on his motion to suppress evidence found at the apartment in Cataño, where he was arrested with Rivera. He also argues that the jury did not represent a fair cross-section of the community, that the evidence was insufficient to sustain his conviction, and that his sentence was unreasonable. The government responds that some of the issues Rodriguez raises were waived and that the issues lack merit.

1. Motion to Suppress

Both Rodriguez and Rivera moved to suppress the evidence found at the Cataño apartment. At the beginning of the suppression hearing, Rodriguez's counsel sought additional evidence, including the address of a witness who had some involvement in the circumstances of the arrest, for the purpose of obtaining a subpoena. After a sidebar conference, the district court stated on the record:

I was under the misapprehension that the subpoena that was requested by [Rodriguez] concerned the person who had the possession or the custody or the use of the place where the defendants were arrested. It turns out that she is not the owner nor did she have that apartment under any type of rent or under her control. Also during this conference, it appeared that [Rodriguez] was there visiting and in those circumstances then he would have no standing to challenge any search that was done at that time and there[fore] his motion to suppress is hereby denied on the basis of standing to file the motion to suppress.

Supp. Hr. T., 8/23/04, at 8-9. The court then ordered Rivera to brief the issue of whether he had standing to move to suppress the evidence. Another hearing on Rivera's suppression motion was held in November, and the motion was denied on December 23, 2004.

On appeal, Rodriguez argues that he had standing to move to suppress the evidence found in the Cataño apartment, despite his status as a guest in the apartment, and that the district court should have heard his motion. The government contends that Rodriguez waived the standing issue by not raising it in the district court.[3] Alternatively, the government argues that the district court did not abuse its discretion in denying Rodriguez a hearing on his motion.

Before a court may reach the merits of a motion to suppress, "the defendant carries the burden of establishing that he

_____

[3]The government does not distinguish between waiver and forfeiture. See, e.g., United States v. Walker, 538 F.3d 21, 23 (1st Cir. 2008).

-9-

had a reasonable expectation of privacy with respect to the area searched or, as in this case, the items seized." United States v. Lipscomb, 539 F.3d 32, 35-36 (1st Cir. 2008), cert. denied, ___ S. Ct. ___, 2009 WL 56596 (U.S. Jan. 12, 2009). Although the threshold requirement is referred to as standing, it is more properly considered under a Fourth Amendment analysis. Id. at 36. "[F]ailure to present evidence with respect to such an expectation prevents a defendant from making a claim for suppression under the Fourth Amendment." United States v. Samboy, 433 F.3d 154, 162 (1st Cir. 2005).

In the district court, Rodriguez failed to address the question of whether he had a reasonable expectation of privacy with respect to the Cataño apartment or the items seized there. On appeal, Rodriguez asserts, based on his status as a casual visitor for a brief period at Rivera's apartment, that he had a reasonable expectation of privacy in the area searched. He is mistaken. See United States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998). The district court properly denied his motion, due to his lack of standing, without further consideration.

2. Motion to Sever

On May 6, 2005, Rodriguez filed a motion to sever trial of the charges against him from Rivera's trial. He argued that Rivera's testimony at the suppression hearing in November of 2004, about the drugs, guns, and money found in the apartment in Cataño,

-10-

was exculpatory evidence which he wanted to present in his defense. He further argued that Rivera would testify on his behalf if the charges against them were tried separately.

The district court addressed the motion on the morning of May 9, 2005. Rodriguez's counsel explained the exculpatory nature of the testimony he expected from Rivera. The court asked whether Rivera would testify on Rodriguez's behalf, and Rivera's counsel said that he would testify only if the charges against him were severed from Rodriguez's trial and if Rivera were tried first. The government objected to the motion on the ground that it was untimely, because the trial had already progressed into the second week, and argued that the totality of Rivera's testimony was not exculpatory. After initially deciding to sever the two indictments, the district court denied Rodriguez's motion as untimely.

A district court's decision to deny a motion to sever is reviewed for manifest abuse of discretion. United States v. DeCologero, 530 F.3d 36, 52 (1st Cir.), cert. denied, 129 S. Ct. 513 & 129 S. Ct. 515 (2008). A motion to sever charges or defendants must be made before trial. Fed. R. Crim. P. 12(b)(3)(D). Failure to move for severance before the deadline for filing pretrial motions constitutes waiver, which may be excused only on a showing of good cause. Fed. R. Crim. P. 12(e); United

States v. Pena-Lora, 225 F.3d 17, 33 (1st Cir. 2000); United States v. Palmer, 122 F.3d 215, 220 (5th Cir. 1997).

On appeal, Rodriguez argues the merits of his severance motion. The government points out that the motion was denied as untimely and that Rodriguez failed to show good cause for the untimely filing.  At oral argument before this court, Rodriguez's counsel represented that the motion to sever was timely, having been filed on the first day of trial following jury selection.  In support of his position, counsel filed a letter, pursuant to Federal Rule of Appellate Procedure 28(j), in which counsel stated: "Said motion was filed on May 6, 2005, after jury selection but before the start of jury trial, day one, on May 9, 2005."[4]

Counsel's representation is contrary to the record and to the statement of the case presented in Rodriguez's own brief.[5] Jury selection was held on April 27, 2005.  The first day of evidence was May 2 and trial continued through May 5.  Therefore, the motion to sever, filed on May 6, 2005, was untimely.

---

[4]Rule 28(j) provides a mechanism for a party to advise the court of "pertinent and significant authorities" that come to light after the brief is filed or after oral argument.  Counsel in this case made improper use of Rule 28(j) to raise additional argument and evidence.

[5]In his brief, Rodriguez states that voir dire and jury selection were held on April 27, 2005, that "[o]n May 2, 2005, first day of trial was held," and that the testimony of government witnesses continued on May 3, May 4, and May 5.  Rodriguez's Brief at 9-10.

In the district court, Rodriguez's counsel explained that the motion was filed on May 6 because he had only received the full transcript of the suppression hearing earlier that week. Counsel further stated that after reading the transcript, he realized that Rivera's testimony was exculpatory. The district court found, however, that because counsel attended the suppression hearing in November of 2004 and heard the testimony at that time, he did not need the transcript before filing the motion.

Based on the circumstances presented here, the motion for severance was untimely, and Rodriguez failed to show good cause for an untimely filing. The district court correctly denied the motion. No abuse of discretion occurred.

### 3. Jury Selection

Rodriguez argues, for the first time on appeal, that the requirement that jurors serving in the District of Puerto Rico be proficient in English violated his Sixth Amendment right to a jury made up of a fair cross section of the community. Issues not raised before the district court are forfeited and subject to review only for plain error. See United States v. Cruz-Rodriguez, 541 F.3d 19, 35 (1st Cir.), cert. denied, 77 U.S.L.W. 3429 (U.S. Jan. 21, 2009); Walker, 538 F.3d at 23. "The plain error standard requires this court to 'find [1] that there is error [2] that is plain and [3] that affects substantial rights.'" United States v.

Rodriguez, 525 F.3d 85, 95 (1st Cir. 2008) (quoting United States v. Epstein, 426 F.3d 431, 437 (1st Cir. 2005)).

We have previously considered the English proficiency requirement and held that it was "justified by the overwhelming national interest served by the use of English in a United States court." United States v. Gonzalez-Velez, 466 F.3d 27, 40 (1st Cir. 2006) (internal quotation marks omitted); United States v. Dubon-Otero, 292 F.3d 1, 17 (1st Cir. 2002). Rodriguez provides no basis to reconsider our previous holding in the circumstances of this case. No error occurred.

### 4. Sufficiency of the Evidence

Rodriguez contends that the evidence at trial was insufficient to convict him of the conspiracy charged in Criminal Case No. 02-391 and the weapons charges in Criminal Case No. 03-284. We review the district court's denial of a Rule 29 motion for judgment of acquittal under the de novo standard. United States v. Giambro, 544 F.3d 26, 29 (1st Cir. 2008). In doing so, however, we view "the evidence in the light most flattering to the jury's guilty verdict [and] assess whether a reasonable factfinder could have concluded that the defendant was guilty beyond a reasonable doubt." Lipscomb, 539 F.3d at 40.

With respect to the conspiracy conviction, Rodriguez argues that relatively little evidence was presented at trial that linked him to the Conejos drug operations in Ponce and that the

-14-

evidence presented showed that he played only a minor role.[6]  To prove that Rodriguez was part of a drug conspiracy, the government was required to prove "that a conspiracy existed, that [Rodriguez] had knowledge of it, and that [Rodriguez] participated voluntarily in it."  United States v. Famania-Roche, 537 F.3d 71, 78 (1st Cir. 2008).  A "conspiratorial agreement may be 'express or tacit and may be proved by direct or circumstantial evidence.'"  Cruz-Rodriguez, 541 F.3d at 26 (quoting United States v. Gomez, 255 F.3d 31, 35 (1st Cir. 2001)).  The underlying criminal activity of the conspiracy charged was a violation of § 841(a)(1), which involves manufacturing, distributing, or dispensing drugs, or possession with the intent to manufacture, distribute, or dispense drugs.

Rodriguez's co-defendant, Sigilfredo Rivera-Rubero, who became a government witness, testified that he first met Rodriguez during a drug transaction in 1996 or 1997 when he bought marijuana from Rodriguez.  Rivera-Rubero testified that initially, in 1996 and 1997, Rodriguez sold him marijuana in the amount of thirty pounds every two weeks.  Rivera-Rubero described the Conejos drug organization and identified its members, which included himself, Rivera, and others.  He further testified that beginning in 1999, he had a business relationship with Rodriguez, selling drugs, and

---

[6]A relatively minor role in a conspiracy, however, does not preclude a conviction on that charge.  See United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995) (discussing potential prejudicial effect of evidence in a joint trial of co-conspirators).

a social relationship with him. At that time, Rodriguez supplied cocaine, marijuana, and heroin to Rivera-Rubero, although Rivera-Rubero also had other suppliers. In addition, Rivera-Rubero testified that Rodriguez sold drugs to other members of the Conejos organization. Rodriguez's wife testified about Rodriguez's contacts with Rivera and that Rodriguez called Rivera "Boss."

"It is not the role of the reviewing court to weigh the evidence; our role is merely to ensure that some evidence exists to support sufficiently the jury's determination." United States v. Liranzo, 385 F.3d 66, 70 (1st Cir. 2004) (internal quotation marks omitted). The evidence is more than sufficient for a rational jury to find that Rodriguez was part of the Conejos drug trafficking conspiracy. Rodriguez's long drug-related relationships with Rivera-Rubero and Rivera, along with supplying drugs to other members of the Conejos organization, support a finding that he knowingly and voluntarily participated in the Conejos drug organization. Therefore, the evidence was sufficient to sustain his conspiracy conviction in Criminal Case No. 02-391.

Rodriguez also argues that evidence is lacking to support his conviction on Count Five in Criminal Case No. 03-284, that he possessed a weapon in furtherance of a drug trafficking scheme in violation of § 924(c)(1), and aided and abetted Rivera in doing so, and on Count Seven, that he was a felon in possession of a firearm,

in violation of § 922(g)(1).[7]  He argues that he was only a visitor at Rivera's apartment in Cataño where the guns were found.  The government contends that the evidence proved that Rodriguez aided and abetted Rivera in possessing guns and also that Rodriguez was in constructive possession of the guns found in the apartment.

Section 922(g)(1), charged in Count Five, requires that Rodriguez have had knowing possession of the guns.[8]  "Knowing possession under § 922(g)(1) can be established by proving that [Rodriguez] had constructive possession of [the guns]; that is, that he knowingly had the <u>power</u> and the <u>intention</u> at a given time of exercising dominion and control over a firearm, directly or through others."  <u>DeCologero</u>, 530 F.3d at 67 (internal quotation marks omitted).

In Count Seven, Rodriguez was charged with violation of § 924(c)(1) by possessing, in furtherance of drug trafficking, and aiding and abetting Rivera in possessing the two guns found at the Cataño apartment when they were arrested.  To convict under § 924(c)(1), the government must prove possession of the guns and a significant nexus between the guns and the drug crime, meaning that "the firearm facilitates or has the potential to facilitate the

---

[7]The weapons charged in those counts were the guns found at the Cataño apartment: "a Glock semi automatic pistol, 45 caliber serial number BZC308, and a Taurus semi-automatic pistol, model PT92, 9mm. caliber, serial number TLD4401-8D."

[8]Rodriguez does not contest his status as a felon or the interstate commerce requirement of § 922(g)(1).

drug trafficking offense."[9]  <u>United States</u> v. <u>Roberson</u>, 459 F.3d 39, 48 (1st Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 1261 (2007). 18 U.S.C. § 2 provides that one who aids or abets another in commission of a crime "is punishable as a principal."

Constructive possession is shown if Rodriguez knowingly had the power and intention to exercise "dominion and control over a firearm directly or through others." <u>United States</u> v. <u>Sanchez-Badillo</u>, 540 F.3d 24, 31 (1st Cir. 2008), <u>cert. denied</u>, --- S. Ct. ---, 2009 WL 56548 (Jan. 12, 2009) (internal quotation marks omitted). "Constructive possession can be joint, does not require actual ownership of the firearm, and can be established through circumstantial evidence . . . ." <u>DeCologero</u>, 530 F.3d at 67.

On the other hand, mere presence with or proximity to weapons or association with another who possesses a weapon are not enough to prove constructive possession. <u>United States</u> v. <u>Duval</u>, 496 F.3d 64, 78 (1st Cir. 2007), <u>cert. denied</u>, 128 S. Ct. 952 & 128 S. Ct. 2499 (2008); <u>United States</u> v. <u>McLean</u>, 409 F.3d 492, 501 (1st Cir. 2005). Instead, the government must show "some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it." <u>McLean</u>, 409 F.3d at 501 (internal quotation marks omitted).

---

[9]To the extent that Rodriguez argues that the government failed to prove that he <u>used</u> a firearm, he misstates the crime with which he was charged.

-18-

As the S.R.T. officers entered the Cantaño apartment, they saw Rodriguez walking from the area of the bedroom and saw Rivera standing in the bedroom doorway, holding a gun. Rivera closed and locked the bedroom door before the officers could enter. The officer in charge arranged his personnel around the closed and locked bedroom door and then kicked the door. Rivera did not respond immediately, but after several kicks, Rivera opened the door and was no longer holding the gun. The officers arrested Rivera and then entered the bedroom where they saw Rodriguez's crutch on the bed and found drugs, drug paraphernalia, money, and two loaded guns - one under a pillow and the other in a box under the bed. They also found clothes and cell phones.

Based on that evidence, which is taken in the light most favorable to the guilty verdict, the jury could have found beyond a reasonable doubt that Rodriguez had been in the bedroom with Rivera and that Rivera was holding one of the loaded guns when the officers entered the apartment. Rodriguez, however, was only a temporary visitor at the apartment, where Rivera was living. He did not own the apartment or its contents, including the guns. The government does not contend that any of the clothes, cell phones, or other property found in the bedroom, other than the crutch, belonged to Rodriguez. The record includes no evidence that Rodriguez owned or actually possessed either gun.

It is not necessary, however, for Rodriguez to have owned or physically possessed the guns to satisfy the possession requirements of § 922(g)(1) and § 924(c)(1) because possession may be constructive. While the evidence shows that Rodriguez was present in the bedroom with the guns and was near Rivera, who was seen holding a gun, evidence is lacking to link Rodriguez to the guns. In the absence of evidence that Rodriguez knowingly possessed the guns found in Rivera's bedroom, either actually or constructively, a reasonable jury could not have found him guilty of being a felon in possession of a firearm as charged in Count Seven of Criminal Case No. 03-284. Therefore, Rodriguez's conviction and sentence on Count Seven are vacated.

With respect to Count Five, Rodriguez was also charged with aiding and abetting Rivera to violate § 924(c)(1), possessing guns in furtherance of a drug crime. A defendant is guilty of aiding and abetting in a crime if the principal committed a crime, and "the defendant consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal." United States v. Garcia-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007). "Again, mere association with the principal or presence at the scene of the crime is insufficient, even with knowledge that the crime is to be committed." Id. Instead, to be guilty as an aider and abettor in violation of § 924(c)(1), the accomplice must both know, to a practical certainty, that the principal would

possess a gun in furtherance of the drug crime and must also facilitate that possession. United States v. Medina-Roman, 376 F.3d 1, 4-5 (1st Cir. 2004).

Because Rivera was convicted of violating § 924(c)(1), which was not appealed, it is established that the principal committed the crime of possessing guns in furtherance of a drug crime. The evidence at trial supports an inference that Rodriguez knew Rivera was engaged in criminal activity related to drug trafficking; indeed, they had a long-standing relationship in the drug trafficking business.

Evidence was introduced that Rodriguez knew that Rivera had guns at the Cataño apartment, which were involved in the drug business. Rodriguez was seen walking from the area of the bedroom, where Rivera was looking out of the door and holding a gun. Rodriguez's crutch was found on the bed in the bedroom. Officers found the guns hidden in the bedroom, along with drugs, money, and drug paraphernalia. The proximity of the guns and the drugs indicates a link between them. Witnesses also testified that Rivera was always armed. That evidence, taken in the proper light, could support a jury's conclusion that Rodriguez knew, to a practical certainty, that Rivera had a gun or guns and would use a gun to protect and defend his drug business. Cf. United States v. Spinney, 65 F.3d 231, 239 (1st Cir. 1995) (finding insufficient

evidence of knowledge to sustain aiding and abetting conviction under § 924(c)).

The record offers no evidence, however, that Rodriguez facilitated Rivera in possessing or using the guns. For example, the record lacks evidence that Rodriguez bought or supplied the guns, arranged for their delivery, or assisted in any other respect in making the guns available for Rivera. See United States v. Luciano-Mosquera, 63 F.3d 1142, 1150-52 (1st Cir. 1995) (discussing evidence of knowledge and facilitation sufficient to sustain conviction of aiding and abetting violation of § 924(c)(1)).

To sustain a conviction for aiding and abetting a violation of § 924(c)(1), the evidence must be sufficient to show both that the defendant knew, to a practical certainty, that the principal would possess a gun in furtherance of the drug crime and that the defendant facilitated that possession. Medina-Roman, 376 F.3d at 6. Because evidence of facilitation is lacking in this case, Rodriguez's conviction and sentence for violating § 924(c)(1), Count Five, are also vacated due to insufficient evidence.

5. Sentencing

Rodriguez challenges the drug quantities the district court used in determining his sentence and argues that his sentences were unreasonable. We review a sentencing court's factual findings, including drug quantity calculations, for clear

error.  United States v. Jones, 523 F.3d 31, 40-41 (1st Cir.), cert. denied, 129 S. Ct. 228 (2008).  We review the substantive reasonableness of a sentence for abuse of discretion.  United States v. Morales-Machuca, 546 F.3d 13, 25 (1st Cir. 2008).

At the sentencing hearing, Rodriguez's counsel argued that evidence was lacking to calculate an amount of drugs attributable to Rodriguez and that, based on testimony at the suppression hearing, the drugs found at the Cataño apartment belonged to Rivera and not Rodriguez.  The district court ruled that for purposes of Rodriguez's sentencing, Rivera's suppression hearing testimony was irrelevant and would not be considered.[10]  The court relied on the presentence report's drug quantity calculations.

The court explained that based on Rivera-Rubero's trial testimony, Rodriguez supplied him with approximately thirty pounds of marijuana on a bi-weekly basis, between 1996 and 1998, for a total of 978 kilograms.  After 1999, Rodriguez supplied Rivera-Rubero with heroin on many occasions, although Rivera-Rubero also had other heroin suppliers.  The court calculated that Rodriguez supplied one kilogram per year of heroin from 1999 until January of 2002.  When converted to the marijuana equivalent, that amount totaled 1000 kilograms of marijuana.  The court found that the total amount of drugs found at the Cataño apartment equaled 1930.4

_____

[10]Rodriguez does not dispute that ruling on appeal.

-23-

kilograms of marijuana. Adding all of the amounts together, the court found that Rodriguez's drug activities involved 5,908.8 kilograms of marijuana.

Rodriguez contends that the drugs found at the Cataño apartment are not attributable to him and argues that those drugs should not have been considered in determining his sentence. Because he was convicted of drug trafficking crimes based on the drugs found at the Cataño apartment, however, his argument is without merit. Rodriguez does not otherwise contest the court's calculations of the drug quantities, and the record supports the court's quantity findings.

Under the Guidelines, a crime involving at least 3,000 kilograms but less than 10,000 kilograms of marijuana yields a base offense level of 34. Because there were no other adjustments, the total offense level was also 34. Based on a total offense level of 34 and a criminal history category of II, the advisory guideline sentencing range was 168 to 210 months. After considering the factors set forth in § 3553(a), which were addressed in the presentence report, the court decided that a sentence at the top of the range was appropriate for Rodriguez. The district court noted that Rodriguez had physical impairments due to his injuries from a serious accident, but found that despite his impairments, Rodriguez continued to be involved in criminal activity.

The district court followed the sentencing protocol that we have prescribed.  See United States v. Smith, 531 F.3d 109, 111 (1st Cir. 2008).  "If the court has calculated the GSR correctly and has supplied a plausible explanation for the sentence imposed, we generally defer to the district court's judgment."  Id.  That is the case here.

B.  Rivera's Appeal

Based on the presentence report calculations and evidence heard at the sentencing hearing, the district court found that Rivera's drug offenses involved more than 30 kilograms of heroin, which converted to 30,000 kilograms of marijuana.  As a result, the applicable base offense level was determined to be 38.  A four-level enhancement was added because of Rivera's leadership role in the offenses, resulting in a total offense level of 42.  The court also found a criminal history category of VI.

Rivera was sentenced to life in prison on Count One of Criminal Case No. 02-391.  In Criminal Case No. 03-284, Rivera was sentenced to life in prison on Counts One and Three and to terms of 40 years on Count Two, 60 months on Count Four, and 120 months on Count Six, all such terms to run concurrently.  In addition, he was sentenced to a term of 60 months for his conviction on Count Five in Criminal Case No. 03-284, which was to be served consecutively to his other sentences in Criminal Case No. 03-284.  Rivera argues that his sentences were not reasonable, that the drug quantity

determination was erroneous, and that the court erred in imposing a four-point adjustment based on his role in the drug operations. We begin by considering Rivera's claims of procedural irregularity before addressing the reasonableness of his sentence.

### 1. Drug Quantity

At the sentencing hearing, the district court explained that a government witness, Rivera-Rubero, testified at trial that he supplied Rivera, for his drug point in Ponce, with two or three eighths of a kilogram of heroin weekly for the time after Rivera left prison in September of 1999 until Rivera-Rubero went to jail in January of 2002. The district court determined that period included 29 months or 116 weeks. Taking the lesser amount, two eighths of a kilogram of heroin per week, the district court calculated that Rivera's drug transactions as part of the Conejos conspiracy involved 29 kilograms of heroin. The court added the 1.260 kilograms of heroin found in the Cataño apartment, which brought the total over 30 kilograms of heroin. Based on Sentencing Guideline § 2D1.1(a)(3), which refers to the Drug Quantity Table at subsection (c), 30 kilograms or more of heroin results in a base offense level of 38.

Rivera argued at the sentencing hearing and argues on appeal that Rivera-Rubero did not supply heroin to him as regularly as the court found because Rivera had other suppliers. As the district court stated at the sentencing hearing, Rivera-Rubero's

testimony established that Rivera was buying two to three eighths of a kilogram of heroin every week during the period between the end of September of 1999 to January of 2002, although his suppliers were not always the same. Therefore, Rivera's argument that Rivera-Rubero, himself, did not always supply heroin to Rivera does not change the drug quantity calculation.

The district court's factual findings as to drug quantity are reviewed for clear error. Sanchez-Badillo, 540 F.3d at 34. The district court did not add drug quantities pertaining to the time Rivera was in prison, as Rivera mistakenly asserts. Instead, the court explicitly considered only the period of the conspiracy from the end of September of 1999 until January of 2002. Further, the drug quantity was calculated using the lesser amount indicated by the testimony and without considering the other drugs Rivera sold or possessed. The district court's drug quantity calculation was conservative and well-supported by the evidence at trial. Therefore the drug quantity finding is not clearly erroneous.

2. Leadership Role

Under Sentencing Guidelines § 3B1.1(a), a defendant's base offense level is raised by four levels if he "was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." "The Guidelines provide a nonexclusive list of factors to guide the determination of whether a defendant held a leadership or organizational role."

<u>United States</u> v. <u>Ziskind</u>, 491 F.3d 10, 17 (1st Cir. 2007), <u>cert.</u> <u>denied</u>, 128 S. Ct. 1305 (2008). We review a district court's decision to impose an enhancement for clear error. <u>Id.</u>

Rivera argues that he was not the main organizer or leader of the Conejos conspiracy, particularly because he was in prison from 1995 to 1999. Instead, he contends, his brother, Richard, was in charge of their drug points. Rivera also contends that he did not have five or more subordinates whom he directed or supervised.

In determining a defendant's role in the criminal activity, the court considers, among other things,

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. 4; <u>see</u> <u>also</u> <u>United States</u> v. <u>Yelaun</u>, 541 F.3d 415, 421 (1st Cir. 2008). Witnesses testified that Rivera and his brother, Piolo, owned and operated a drug point selling cocaine and heroin in the Conejos organization after Rivera was released from prison in 1999.[11] As the district court found, testimony at

---

[11]Although Rivera's brother, Richard, testified that he owned the drug point and that Rivera was not involved in the drug business, the jury believed other witnesses about Rivera's involvement in criminal activity.

-28-

trial established that more than five co-conspirators were involved with Rivera at the Conejos drug point. The witnesses' testimony established that Rivera made the decisions as to which drug suppliers he would use for the drug point. Evidence shows that Rivera ran the drug point and sold drugs from it.

Even if Rivera were subordinate to Richard in the hierarchy of the conspiracy, that would not negate Rivera's leadership role. See United States v. Arango, 508 F.3d 34, 49 (1st Cir. 2007), cert. denied, 128 S. Ct. 1101 & 128 S. Ct. 1904 (2008); United States v. Ventura, 353 F.3d 84, 89 (1st Cir. 2003). The evidence supports the district court's finding that Rivera had a leadership role in a criminal activity that involved five or more participants.

### 3. Reasonableness

Rivera contends that the presentence report and the district court treated the Sentencing Guidelines as if they were mandatory and ignored the factors provided by § 3553(a), resulting in an unreasonable sentence. In particular, Rivera argues that his life sentence was greater than necessary, that the court failed to consider his particular characteristics and history, and that the four-level enhancement he received for his role in the conspiracy is unreasonable because other co-conspirators, including his brother Richard, received only a three-level enhancement.

We review a sentence for procedural error, including the district court's application of § 3553(a), and then consider a challenge to the substantive reasonableness of a sentence, both of which are reviewed for an abuse of discretion. Rodriguez, 527 F.3d at 224. "In considering objections to a sentence's substantive reasonableness, we examine the district court's contemporaneous oral explanation of the sentence, its near-contemporaneous written statement of reasons, and what fairly can be gleaned by comparing what was argued by the parties or proffered in the PSI Report with what the sentencing court ultimately did." United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008).

Section 3553(a)(6) directs a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." A consideration of sentencing disparities under that section, however, "aims primarily at the minimization of disparities among defendants nationally." Martin, 520 F.3d at 94. In addition, as the district court noted, Richard and the other co-conspirators pled guilty, pursuant to plea agreements that addressed their roles under U.S.S.G. § 3B1.1. Given the material difference between the defendants who pled guilty pursuant to plea agreements and Rivera who did not, no disparity in sentencing occurred in this case that would amount to an abuse of discretion. See United States v. Brandao, 539 F.3d 44, 65 (1st Cir. 2008).

-30-

Rivera's counsel argued at the sentencing hearing that because of Rivera's young age and a corrupt system that encouraged illegal drug activity in Ponce, the court should not sentence Rivera to life in prison. Counsel also argued that Rivera was a fugitive before he was arrested in September of 2003 based on the advice of his former counsel. Counsel acknowledged that Rivera's "life had been one of crime for many years" and that he had "been in jail most of his adult life," but she blamed corruption in the system for making him a criminal and perpetuating his life of crime.

After explaining the total offense level, the criminal history category, and the applicable guideline range of 360 months to life in prison, the district court stated that the Sentencing Guidelines were advisory. The court recited the sentencing considerations provided by § 3553(a). With reference to the presentence report, which had been addressed extensively during the sentencing hearing, the court discussed Rivera's activities in light of the § 3553(a) considerations. The court found that although Rivera was young, he had an extensive history of recidivism, involving both violent crimes and drug crimes. As a result, the court concluded that a life sentence, the high end of the advisory guideline range, was appropriate.

The record shows that the district court considered the § 3553(a) factors and imposed a reasonable sentence after

considering Rivera's particular circumstances.  The court did not abuse is discretion.

III.

For the foregoing reasons, Rivera's sentence is affirmed.  Rodriguez's convictions and sentences are affirmed as to Criminal Case No. 02-391 and Counts One, Two, Three, and Four of Criminal Case No. 03-284.  Rodriguez's convictions and sentences on Counts Five and Seven in Criminal Case No. 03-284, however, are vacated.  The case is remanded for proceedings not inconsistent with this opinion.[12]

**Affirmed in part, and Vacated and Remanded in part.**

---

[12]We note that the judgment entered as to Rodriguez in Criminal Case No. 02-391 suggested that the sentence entered in that case was to be served consecutively to the sentence entered on Count Five in Criminal Case No. 03-284.  Entry of amended judgments will correct that potentially ambiguous statement.